AE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel. KEVIN JONES, <br><br> Petitioner, <br><br> v. <br><br> ALAN UCHTMAN, Warden, Menard Correctional Center, <br><br> Respondent. | No. 05-C-1898 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Petitioner Kevin Jones is currently serving concurrent terms of thirty-three and ten years for first degree murder and attempted armed robbery, respectively. (R. 8, Pet. at 1.) On April 15, 2005, Jones filed a petition for a writ of habeas corpus claiming that his continued custody violates the United States Constitution. (*Id.* at 5.) Jones's petition sets forth two grounds for relief: 1) that his custody violates the Fifth and Fourteenth Amendments because his conviction was supported by inculpatory statements he made after invoking his right to remain silent and to consult with an attorney; and 2) that his custody violates the Sixth Amendment because his appellate counsel was ineffective. (*Id.*) After carefully considering these claims, we find that Jones has procedurally defaulted the first claim and failed to satisfy the standards for relief set forth in 28 U.S.C. § 2254(d) with respect to the second claim. As a result, we deny Jones's petition for federal habeas relief. (R. 8-1.)

## RELEVANT FACTS

In reviewing any petition for habeas relief, this Court must presume that the state court's factual determinations are correct unless the petitioner rebuts those facts by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). We therefore adopt the recitation of the facts set forth in the Illinois Appellate Court's order denying Jones's appeal from the circuit court's dismissal of his post-conviction petition. We have gleaned the facts regarding the procedural history of this case from Jones's habeas petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

**A.   The October 1998 Shooting**

In October 1998, Jones approached two men who had just purchased illegal drugs from him, pointed a pistol at one of the men, and fatally shot him. (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 4.) Jones then fled the state of Illinois, but later returned and surrendered to the police. (*Id.*) The police recovered the weapon that fired the fatal shot from an individual named Ronnie Carpenter. (*Id.*) Jones gave a statement acknowledging that Jones and Carpenter were friends. (*Id.*) Jones also admitted that he approached the two men with a weapon because he wanted to "stick[] somebody up" and that he shot at them when they fled. (*Id.*)

**B.   The Suppression Hearing**

Prior to trial, Jones filed a motion to suppress arguing that the inculpatory statements he made to the police were not voluntary and were obtained as the result of an interrogation that continued after Jones invoked his right to remain silent and/or his right to consult with an attorney. (*Id.* at 1-2.) The Circuit Court of Cook County held a hearing to consider Jones's motion to suppress. (*Id.* at 2.) At the hearing, Detective Sylvia Van Witzenburg testified that on November 4, 1998 she met Jones in an interview room at a police station around 6 p.m. (*Id.*) She testified that she informed Jones of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436

(1966), and that Jones indicated that he understood those rights. (*Id.*) Van Witzenburg asked Jones if he wished to give a statement, and he answered in the affirmative, saying he wanted to "get it off of his chest." (*Id.*) Van Witzenburg and Jones then discussed the October 1998 shooting for about an hour and a half. (*Id.*)

Van Witzenburg testified that at about 11 p.m., Assistant State's Attorney Michelle Gemskie met with Jones in Van Witzenburg's presence. (*Id.*) Gemskie told Jones that she was a prosecutor, not his defense counsel, and informed Jones of his *Miranda* rights. (*Id.*) Jones again indicated that he understood those rights. (*Id.*) Jones elected to have a court reporter transcribe his statement, and when a court reporter arrived around 3:30 a.m., Gemskie again informed Jones of his *Miranda* rights and Jones again indicated that he understood them. (*Id.*) Defendant then gave a statement, after which Gemskie read the transcribed statement aloud and Jones made some changes and corrections. (*Id.*) All who were present signed the statement. (*Id.* at 2-3.)

Jones told Van Witzenburg that his formal education did not proceed beyond the ninth grade and that he was not able to read or write very well. (*Id.* at 3.) She testified, however, that he appeared to understand his rights and that he gave appropriate answers to the questions posed to him. (*Id.*) Jones never stated in Van Witzenburg's presence that he did not understand his rights, that he was learning disabled, or that he wanted an attorney. (*Id.*)

Jones also testified at the suppression hearing. He stated that, on November 4, 1998, he went to the police station with his aunt, Tammy Jones, because Ms. Jones told him that the police wanted to question him regarding a homicide.[1] (*Id.*) On the way to the station, Jones asked Ms. Jones about an attorney, and she told him that one would be provided at the police station. (*Id.*)

---

[1] To avoid confusion, we refer to Tammy Jones as "Ms. Jones" throughout this opinion.

3

Jones waited in the police station lobby for about an hour before two male detectives took him inside. (*Id.*) Jones did not request an attorney in Ms. Jones's presence. (*Id.*) Jones testified that without informing him of his *Miranda* rights, one of the male detectives asked Jones if he committed a murder on October 2, which Jones denied. (*Id.*) They did not ask Jones anything further, and Jones did not ask them if he could consult with an attorney. (*Id.*) One of the detectives booked Jones and informed him of his *Miranda* rights. (*Id.*) The detectives took Jones into a small room where he waited for Van Witzenburg for around four hours. (*Id.*)

Jones's testimony regarding his discussion with Van Witzenburg differed substantially from Van Witzenburg's testimony. Jones stated that Van Witzenburg asked him what happened on October 2, 1998 without informing him of his *Miranda* rights. (*Id.*) Jones requested an attorney, but Van Witzenburg told him that none were available. (*Id.*) On cross-examination, however, Jones testified that he asked for an attorney right after Van Witzenburg read him his *Miranda* rights. (*Id.* at 3-4.) Jones testified that when Gemskie arrived, she and Van Witzenburg questioned Jones but he insisted that he did not know what happened and asked to consult with an attorney. (*Id.* at 4.) A court reporter arrived sometime later, after which Gemskie again asked Jones questions about the shooting which he answered. (*Id.*) He then signed a type-written statement. (*Id.*) Jones admitted that he never requested an attorney while the court reporter was transcribing his statement. (*Id.*)

Tammy Jones also testified on Jones's behalf. She stated that on the way to the police station, Jones told her that he wanted to turn himself in and that he needed a lawyer. (*Id.*) Ms. Jones testified that at the police station, Jones informed a uniformed police officer that he needed a lawyer and that Jones was almost immediately led away from the lobby. (*Id.*)

4

After considering all of this testimony, the circuit court denied the motion to suppress. The court found that Jones was informed of his *Miranda* rights "at almost every juncture" and that "the credible evidence . . . suggests that he did not" request an attorney. (*Id.*) The circuit court also found that Jones gave the statements voluntarily. (*Id.*)

### C.    Jones's Direct Appeal and State Post-Conviction Proceedings

On January 26, 2001, following a jury trial, Jones was convicted of first degree murder and attempted armed robbery. (R. 8, Pet. at 1.) Jones appealed his conviction and sentence to the Illinois Appellate Court, raising the following three arguments: 1) that he was denied a fair trial due to the admission of inadmissible hearsay; 2) that he was denied a fair trial due to improper closing arguments; and 3) that he was given an excessive sentence based on his age. (*Id.* at 2.) On August 1, 2002, the Illinois Appellate Court affirmed his conviction and sentence. (*Id.*) Jones then filed a petition for leave to appeal in the Illinois Supreme Court raising the same three arguments he made before the appellate court. (*Id.*) The Illinois Supreme Court denied his petition on December 5, 2002. (R. 15, Record, Ex. F, Ill. Sup. Ct. Order.)

On December 26, 2002, Jones filed a post-conviction petition in the Circuit Court of Cook County. (R. 8, Pet. at 3.) Jones raised ten issues in his petition, including his claim that his Fifth Amendment rights were violated when he asked for an attorney at the police station and none was provided and that his appellate counsel was ineffective for failing to raise the main issues in his post-trial motion. (R. 15, Record, Ex. G, Post-Conv. Pet. at 5-6.) The circuit court summarily dismissed Jones's petition as being frivolous and patently without merit. (R. 15, Record, Ex. L, Ill. App. Ct. Order at 5.) Jones appealed the dismissal to the Illinois Appellate Court. In his appellate brief, the only issue Jones raised was whether his post-conviction petition

5

stated "the gist of a meritorious claim" that his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress his statements where those statements were taken in violation of his Fifth Amendment rights. (R. 15, Record, Ex. I, Pet.'s App. Brief at 2.) The appellate court affirmed the dismissal of Jones's post-conviction petition on August 5, 2004. (R. 8, Pet. at 3.)

On August 25, 2004, Jones filed a petition for leave to appeal in the Illinois Supreme Court. (R. 15, Record, Ex. M, Post-Conv. Pet. for Leave to Appeal.) In his petition, Jones again raised only the issue of whether his post-conviction petition stated the gist of a meritorious claim regarding ineffective assistance of counsel. (*Id.* at 2.) On November 24, 2004, the Illinois Supreme Court denied Jones's petition. (*Id.*, Ex. N, Ill. Sup. Ct. Order.) Jones filed the current petition for a writ of habeas corpus on April 15, 2005.

## LEGAL STANDARDS

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has fairly presented his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). "Federal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a 'fundamental miscarriage of justice.'" *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citations

omitted).

Even where a petitioner has overcome all procedural hurdles, a federal court can only grant an application for habeas review if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See also Woodford v. Visciotti*, 537 U.S. 19, 21 (2002) (per curiam). Under this deferential standard, we must "attend closely" to the considered decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000).

## ANALYSIS

### I. Ground One: Fifth and Fourteenth Amendment Violation

The first ground for relief set forth in Jones's petition states that the use of his inculpatory statement violated his Fifth and Fourteenth Amendment rights because the police continued to interrogate him after he elected to remain silent and to consult with an attorney. (R. 8, Pet. at 5.) Respondent argues that Jones has procedurally defaulted this claim by failing to fully pursue it in the state court direct appeal or post-conviction proceedings. (R. 16, Answer at 11-14.)

A federal habeas petitioner is only entitled to relief if he has exhausted all of the available state remedies and raised all of the claims cited in his habeas petition during the course of the state court proceedings. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). In other words, the petitioner must have "given the state courts a full and fair opportunity to review the claim."[2] *Steward*, 80 F.3d at 1211. To meet this requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, "one complete round" of appellate review includes appellate court review as well as a petition for discretionary review in the Illinois Supreme Court. *Id.* The Seventh Circuit has held that the *Boerckel* procedural default rule "applies with equal force in a case . . . on collateral review." *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

Respondent correctly points out that Jones did not raise his Fifth and Fourteenth Amendment claims regarding the allegedly illegal interrogation at any point during his direct appeal. (R. 16, Answer at 11; R. 15, Record, Exs. A, C, & E, Pet.'s App. Brs. & Pet. for Leave to Appeal.) Nor did he pursue this claim in "one complete round" of the post-conviction process. *Boerckel*, 526 U.S. at 845. While Jones did raise his claim that his confession was illegally coerced and his Fifth Amendment rights were violated in his post-conviction petition, (*see* R. 15, Record, Ex. G, Post-Conv. Pet. at 5), he did not pursue this claim in either his appeal from the circuit's court's denial of his post-conviction petition or his petition for leave to appeal that decision to the Illinois Supreme Court, (*see id*, Ex. I, Pet.'s Post-Conv. App. Br. & Ex. M, Post-

---

[2]This rule "stems from the understanding that state courts are equally obliged to follow federal law and from the desire for comity between state and federal court systems." *Spreitzer*, 219 F.3d at 645.

8

Conv. Pet. for Leave to Appeal).³ As a result, he is procedurally barred from pursuing that claim in his federal habeas petition. *Boerckel*, 526 U.S. at 845.

A federal habeas petitioner may proceed on a claim in the face of a procedural default where he "can demonstrate both cause for and prejudice stemming from that default . . . *or* he can establish that the denial of relief will result in a miscarriage of justice[.]" *Lewis*, 390 F.3d at 1026 (emphasis in original) (citations omitted). Cause exists where the petitioner can show that some kind of external factor prevented him from presenting his federal claim to the state courts. *Id.* Prejudice exists where "the violation of the petitioner's federal rights 'worked to his *actual and substantial disadvantage*, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). A petitioner may only overcome procedural default based on a fundamental miscarriage of justice if he shows that he is actually innocent of the crime for which he was convicted. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995). In other words, a fundamental miscarriage of justice exists if no reasonable juror would have found him guilty of the offense but-for the constitutional errors he ascribes to the state court. *Id.*

Though we review Jones's petition with extra caution given his *pro se* status, we find that Jones has not overcome the procedural default of his Fifth and Fourteenth Amendment claims.

---

³The only issue Jones raised at those stages was whether his post-conviction petition stated the gist of a meritorious claim that his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress his statements where those statements were taken in violation of his Fifth Amendment rights. (*Id.*, Ex. I, Pet.'s Post-Conv. App. Br. at 2 & Ex. M, Pet. for Leave to Appeal at 2.) However, "the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise." *Lewis*, 390 F.3d at 1026.

9

In his reply brief, Jones gives no explanation for his failure to pursue his Fifth and Fourteenth Amendment claims through a complete round of the state appellate or post-conviction process. His statement that this claim was in "[e]very line of every page" of his state court papers is simply not supported by the record. (R. 18, Pet.'s Resp. at 3.) Without some explanation of an objective external factor that prevented him from fully pursuing the claim, we cannot find that there was cause for his procedural default. *Lewis*, 390 F.3d at 1026. Nor can we find that procedurally defaulting this claim would result in a miscarriage of justice, because nowhere in his petition or reply has Jones asserted that he is actually innocent of the crimes for which he stands convicted. *Schlup*, 513 U.S. at 327-29. For all of these reasons, we find that procedural default bars Jones's petition for relief based on the alleged violation of his Fifth and Fourteenth Amendment rights.

## II. Claim Two: Sixth Amendment Violation

In the second ground for relief set forth in Jones's petition, he claims that his continued custody violates the Sixth Amendment because his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erroneously denied Jones's motion to suppress his inculpatory statement after that issue was raised in Jones's post-trial motion. (R. 8, Pet. at 5.) It is unclear whether Jones's ineffective assistance of counsel claim is based on his appellate counsel's failure to argue that his motion to suppress should have been granted because he invoked his right to remain silent or because he requested counsel and none was provided. In recognition of our duty to give liberal interpretation to a *pro se* petitioner's claims, we will address this claim as if Jones had clearly raised both of these grounds.

A.  **Appellate Counsel's Failure to Argue That Jones's Statement Should Have Been Suppressed Based on His Invocation of His Right to Remain Silent**

In order to succeed on a petition for federal habeas relief, the petitioner must show that "[t]he specific ground for ineffectiveness raised in the federal petition [was] raised in the state case." *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998); *see also Strickland v. Washington*, 466 U.S. 668, 690 (1984) (noting that "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). Where the "underlying legal theory and the facts on which it is based have remained the same" throughout a petitioner's post-conviction proceedings, however, a federal court may properly find that the petitioner has exhausted his claims. *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004), *cert. denied*, 125 S. Ct. 657 (2004).

To the extent that Jones's petition for habeas relief rests on the specific ground that his appellate counsel was ineffective for failing to argue that his right to remain silent was violated, we find that Jones has procedurally defaulted this claim. Whether Jones invoked his right to remain silent is a question that rests on separate facts from the question of whether he invoked his right to consult with counsel. As explained above, the only issue that Jones pursued all the way through the post-conviction review process was his argument that his post-conviction petition:

> states the gist of a meritorious claim that appellate counsel was ineffective for failing to challenge the trial court's denial of Jones' motion to suppress his statements where those statements were taken in violation of Jones' Fifth Amendment rights, after Jones[] had requested an attorney, and without Jones' knowingly waiving his

11

*Miranda* rights.[4]

(*Id.*, Ex. I, Pet.'s Post-Conv. App. Br. at 2.) Nowhere in his post-conviction briefs did Jones argue that his counsel was ineffective for failing to argue that his statement was taken in violation of his right to remain silent.[5] (*Id.*, Ex. I, Pet.'s Post-Conv. App. Br. & Ex. K, Pet.'s Post-Conv. Reply.) Nor did the appellate court reviewing the circuit court's dismissal of Jones's post-conviction petition address this issue. (*Id.*, Ex. L, Ill. App. Ct. Post-Conv. Order.) Jones made the exact arguments in his petition for leave to appeal to the Illinois Supreme Court at the post-conviction stage as he made in his appellate briefs at that stage. (*Id.*, Ex. M, Post-Conv. Pet. for Leave to Appeal.)

Again, Jones has made no attempt to explain why he failed to pursue this claim for a full round of state court review during the post-conviction process. He has not identified any external factor that would meet the cause exception to procedural default, nor has he argued that he is actually innocent of the crime for which he stands convicted. As a result, we find that Jones has procedurally defaulted his claim that his appellate counsel was ineffective for failing to argue that his right to remain silent was violated. Even if we had found no procedural bar to this claim, for the same reasons set forth in section B *infra* we would nonetheless find that Jones has not met the criteria for federal habeas relief with respect to this claim.

---

[4]Jones could not have raised this claim during the direct appellate review process because he is challenging the conduct of his appellate counsel.

[5]Jones did note that his motion to suppress alleged that his statement was taken in violation of his right to remain silent and that he made that argument in his post-conviction petition, (*see* R. 15, Record, Ex. I, Pet.'s App. Br. at 4-5 & 9-10), but he did not argue that his appellate counsel was ineffective for failing to pursue that particular argument.

**B. Appellate Counsel's Failure to Argue That Jones's Statement Should Have Been Suppressed on Voluntariness Grounds or Based on Jones's Invocation of His Right to Counsel**

There is no procedural bar to Jones's claim that his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress based on his invocation of his right to counsel and his argument that he did not knowingly and voluntarily waive his *Miranda* rights. Jones pursued this claim through one complete round of state review at the post-conviction stage and the appellate court considered and rejected this claim. (*See* R. 15, Record, Exs. G, I, & M, Pet.'s Post-Conv. Brs.) As a result, we must determine whether Jones has shown that the Illinois Appellate Court's adjudication of his ineffective assistance of counsel claim was contrary to or involved an unreasonable interpretation of clearly established federal law, or that the decision rests on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The appellate court's rejection of Jones's ineffective assistance of counsel claim was not contrary to clearly established federal law. The appellate court at the post-conviction stage correctly identified and applied the *Strickland* test as the proper standard of review for ineffective assistance of appellate counsel.[6] (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 6.) Under this test, the petitioner must show that his appellate counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687. In reviewing an ineffective assistance of counsel claim, the courts must "indulge 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Winters v. Miller*, 274 F.3d 1161, 1166 (7th Cir. 2001) (quoting *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996)). "Appellate

---

[6]As with any case of ineffective assistance of trial counsel, whether Jones's appellate lawyer was incompetent is determined under the two-prong test set forth in *Strickland*. *See Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000).

13

counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised." *Id.* at 1167. Counsel is not required, however, to raise every non-frivolous issue on appeal. *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004). The requisite prejudice exists "only when appellate counsel fails to raise an issue that 'may have resulted in a reversal of the conviction, or an order for a new trial.'" *Winters*, 274 F.3d at 1167 (quoting *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)).

Jones has not demonstrated—nor do we find—that the appellate court's decision is contrary to the federal ineffective assistance of counsel doctrine. A state court decision is contrary to federal law only if "'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite'" to the Supreme Court's holding. *Anderson v. Cowen*, 227 F.3d 893, 896 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 405). Those circumstances simply do not exist in this case. The appellate court specifically relied on the Supreme Court's *Strickland* test when it denied Jones's ineffective assistance of counsel claim and Jones has not identified any "materially indistinguishable" Supreme Court cases that reach an opposite conclusion. (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 6.)

Nor did the appellate court incorrectly apply the *Strickland* doctrine to Jones's claim of ineffective assistance of counsel. The appellate court specifically found that Jones did not demonstrate that his appellate counsel acted outside the range of reasonable professional assistance in failing to challenge the trial court's suppression ruling because any such challenge would have been meritless. (*Id.* at 8.) We agree. Jones's appellate counsel raised three issues on

direct appeal and challenged both Jones's conviction and sentence. Although her arguments were ultimately rejected, it is clear that Jones would have fared no better had she challenged the trial court's suppression ruling. As the appellate court at the post-conviction stage found, the suppression ruling was based on the trial court's finding that Jones's testimony simply was not credible. (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 8.) Jones's appellate attorney may have made the strategic decision not to challenge that ruling given the strong support for the trial court's finding in the suppression hearing transcript. As a result, the performance of Jones's appellate counsel was not constitutionally deficient. *See Mason*, 97 F.3d at 893 (noting that courts should not second-guess appellate counsel's strategy decisions).

For the same reasons, the appellate court at the post-conviction stage correctly found that Jones was "not prejudiced when appellate counsel did not challenge the denial of the motion to suppress on direct appeal." (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 8.) To demonstrate prejudice, Jones must show that his conviction may have been reversed or he may have been entitled to a new trial had his appellate counsel challenged the suppression decision. *Winters*, 274 F.3d at 1167. In other words, Jones must demonstrate that there is a reasonable probability that a challenge to the trial court's suppression ruling would have been successful. *See McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Jones has not shown that any challenge to the suppression ruling in his case would have been successful at the appellate level. At the post-conviction stage, the appellate court specifically found that the circuit court did not err in suppressing Jones's statement. (R. 15, Record, Ex. L, Ill. App. Ct. Post-Conv. Order at 8.) There is no reason to believe that its decision would have been any different had Jones's appellate counsel raised the issue on direct review. As a result, Jones's ineffective assistance of

15

counsel claim does not meet the *Strickland* prejudice prong.

Having found that the appellate court's decision is neither contrary to nor based on an unreasonable application of federal law, we are left to determine whether its judgment is based on an unreasonable determination of the facts. Pursuant to Section 2254(e), we must presume that the appellate court's findings of fact regarding Jones's waiver of his *Miranda* rights and invocation of counsel are correct. The appellate court reviewed the suppression hearing transcript and found that "Detective Van Witzenburg testified clearly and coherently" that Jones was repeatedly informed of his *Miranda* rights and that he understood those rights. (*Id.* at 7.) It also noted that Van Witzenburg clearly testified that Jones had not requested an attorney while Jones had given conflicting testimony both as to whether and when he was informed of his rights and whether he requested assistance of counsel. (*Id.* at 7-8.) Based on this evidence, the appellate court found that the trial court did not err in finding that Jones's statement was voluntary and that Jones was not prejudiced by his appellate counsel's failure to challenge that finding. (*Id.* at 8.)

We have conducted a thorough review of the transcript from the motion to suppress hearing and we find no reason to disturb the Section 2254(e) presumption. The transcript reveals that Van Witzenburg gave consistent testimony regarding the time and manner in which Jones was advised of his *Miranda* rights, that Jones repeatedly stated that he understood those rights, and that Jones never invoked his right to counsel. (R. 15, Record, Ex. O, Trans. at A-7-8, A-10-11, A-13, A-16-17.) As the appellate court noted, Jones and his aunt gave inconsistent testimony on these issues. (*See id.* at C-10, C-18, C-20-23, C-28, C-41.) The circuit court's decision was largely based on its determination that Van Witzenburg's testimony was credible while Jones's

and his aunt's testimony was not. (*Id.* at C-49-50.) These credibility determinations are the special province of the trial court which actually evaluates the testimony, and we are in no position to second-guess the state court's credibility determinations. *Sprosty v. Buchler*, 79 F.3d 635, 643 (7th Cir. 1996). As a result, we find that the appellate court's decision is based on a reasonable application of the underlying facts. 28 U.S.C. § 2254(d)(2).

For all of the reasons set forth in this section, we find that Jones's claim that his appellate counsel was ineffective for failing to challenge the trial court's suppression of his inculpatory statement is without merit. Moreover, the appellate court's denial of Jones's appeal from the dismissal of his post-conviction petition comported with federal law and is based on an imminently reasonable determination of the facts. As such, Jones is not entitled to relief under 28 U.S.C. § 2254(d). In reaching this conclusion, we are sensitive to the fact that Jones is a *pro se* petitioner with limited education and access to resources. Nonetheless, we only have jurisdiction to issue a writ of habeas corpus where a petitioner meets the burden laid forth in Section 2254(d). Because Jones has not met that burden here, we must deny his petition.

## CONCLUSION

For the reasons set forth above, Jones's petition for a writ of habeas corpus is denied. (R. 8-1.) Additionally, we deny Jones's motion for an extension of time to file a supplemental habeas petition. (R. 17-1.) In support of this motion, Jones states only that he wishes to bring forth every claim he filed in the state courts and that he did not do so originally due to his own negligence. (*Id.*) The standards set forth in 28 U.S.C. § 2254(d) make clear that Jones is not entitled to re-litigate every issue that he pursued and lost at the state court level. He is only entitled to federal habeas relief if his continued custody is contrary to federal law. 28 U.S.C. §

17

2254(a). Because Jones has not argued that any of his remaining claims meet that hurdle, and because he had every opportunity to bring forth meritorious claims in his original petition, his motion for an extension of time to supplement his petition is denied. (R. 17-1.)

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

Dated: September 8, 2005